554

## NEY et al. v. UNITED STATES.

District Court, W. D. Virginia,
at Harrisonburg.
May 27, 1940.

Hamilton Haas, of Harrisonburg, for plaintiffs.

Frank S. Tavenner, Jr., U. S. Atty., of Woodstock, for defendant.

PAUL, District Judge.

This action is one for the refund of taxes paid by the plaintiff under the provisions of the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq., which subsequent to the payment of the taxes was held unconstitutional. The particular tax involved is what is commonly referred to as the floor stock tax imposed upon merchants and assessed upon goods of cotton content held by them for sale on August 1, 1933, the effective date of the Agricultural Adjustment Act. The amount involved is $681.11.

Following the holding of the unconstitutionality of the Agricultural Adjustment Act, provision was made by Act of Congress for a refund of the taxes collected thereunder, with the provision that no refund should be granted unless the claimant established that he himself had borne the burden of the tax and had not been relieved thereof and had not shifted the burden directly or indirectly to some other person. The plaintiffs here are proprietors of a retail department store and, as applied to this particular case, the burden imposed upon them in order to recover the tax paid was to show that they had absorbed the amount of the tax and had not passed it on to customers and purchasers of their store by an increase of prices or otherwise.

The statute, Section 903 of the Revenue Act of 1936, 49 Statutes at Large, page

1747, 7 U.S.C.A. § 645, provides in part that, "No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act [this chapter] unless, after the enactment of this Act [June 22, 1936], and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath."

The plaintiffs made due application for the refund of the tax paid and submitted to the commissioner affidavits of various persons connected with their business, each of which affidavits contained a statement that to the knowledge of the affiant no increase in prices had been made in the store upon any articles of merchandise subject to the tax and that the burden of the tax had not been shifted to the consumer in any way. The claim was rejected apparently for the reason that the commissioner did not consider that the evidence was sufficient and, in fact, he requested the claimant to establish these facts by their records. This supporting evidence was not furnished, although it may be said that the reasons why it was not do not indicate any disinclination on the part of the plaintiffs to furnish all of the evidence they could; but was due to other causes which, in the opinion of the court, have little or no bearing on the merits of the claim.

Following the final rejection of the claim for refund, this action was instituted to recover the amount of the tax paid. The defendant submitted its motion to dismiss the action on the ground that the allegations of the complaint showed that the court was without jurisdiction to maintain the action, and this contention has its basis as follows:

It will be noted that the statute previously quoted relating to refunds provides that when the claim for refund is filed before the commissioner, "all evidence relied upon in support of such claim shall be clearly set forth under oath".

It is contended that this last-quoted provision intended to require that on any claim for refund, the claimant must set forth under oath all of the evidence upon which he relied. Emphasis is placed on the word "all", it being contended that a plaintiff must submit all of the evidence which

was available to him or which he could in any way produce to support his claim; that the submission of all such evidence before the commissioner was a condition precedent to the allowance of any claim for refund; that this being an essential condition to the perfection or adequacy of any claim for refund, no suit can be maintained in court unless the complaint alleges as an essential part of its right of action that it did present to the commissioner all available evidence bearing on its right to refund. It is further contended that in this action in court, the plaintiff is limited in its production of evidence to the same evidence that was previously submitted to the commissioner. The plaintiffs not having alleged that they had submitted all of the evidence at their command to the commissioner, it is contended that the complaint is subject to a motion to dismiss because of its failure to allege essential facts. The court took under consideration the motion to dismiss and directed that the trial of the case proceed. In the course of the trial, the defendant made timely objection to all evidence submitted by the plaintiffs except the evidence which had previously been submitted to the commissioner. These objections, the court also took under advisement.

I am of opinion that the motion to dismiss is not well taken. It is contended by the plaintiffs that the provision of the statute is not intended to require that in making application for a refund before the Commissioner of Internal Revenue the plaintiff, in order to have his claim considered, must submit all of the evidence which is in any way available to him or which he may be able to produce by diligent search, but means only that all such evidence as is produced must be under oath; that it was intended that claims should not be considered on mere informal statements or on memoranda, but that all of the evidence submitted should be with the solemnity and dignity of verification under oath; that it was never intended that the claimant should produce all the evidence which he might find available or forever thereafter be barred from introducing different evidence in a court proceeding.

Admitting that the language of the questioned clause might be construed to support the position of the defendant, it seems to the court that the sounder and more logical construction is that advanced by

the plaintiffs. It is true that Congress knew that there would be a great number of claims for these refunds and that there was an opportunity for fraud on the part of the claimants and, with this knowledge, it wished to make sure that claims would not be lightly granted or granted upon informal and incompetent evidence. It wished to protect the government from unfair claims by compelling that all claims be made under the assurance of propriety that an oath would imply; but there is no reason for thinking that Congress intended to go further and to set claims for refunds in these cases in a class entirely different from claims for the refund of other taxes and to compel what would be a distinctly and essentially an entirely different procedure for obtaining the refund than obtains in the case of other taxes.

 It would seem, therefore, that where a claim has been rejected by the commissioner and this fact is alleged in the complaint, no further allegation is necessary to enable the plaintiffs to maintain their suit. Following the same line of reasoning, it is the opinion of the court that in this action the plaintiffs are not necessarily limited to the same evidence which was produced before the commissioner on the claim for refund.

 The evidence which has been introduced at the trial in this court consisted of the oral statements under oath of a number of employees of the plaintiffs' store who were introduced as witnesses and whose testimony was in substance the same as the statements contained in the affidavits filed before the commissioner. Many of the witnesses introduced were the same as those who had made affidavits submitted to the commissioner. Naturally their oral testimony was at more length and went more into detail than the bare statements contained in the affidavits. In addition to the testimony of these witnesses, the plaintiffs introduced a number of what were termed sales slips of various articles sold in their store and which purported to show that the selling price of articles was the same following the incidence of the tax as it was previous to that time. The evidence of these sales slips tended to bear out the oral statements of the witnesses; and if assuming that the articles in each instance were identically the same, they would give full support to the statement that no increase in price was made.

The court has considered this evidence, but it may be said that it is not of great weight because of the admitted inability of the witnesses to show that the articles sold at the same price were identically the same. The sales slips contained only a general description of the articles, such as "pants" or "dresses" without any additional description to indicate they were articles of identical value or identical quality. The witnesses freely admitted their inability to give a more definite comparison of the articles, but stated that the general policy of the store was to carry merchandise falling into certain class prices, that is, different classes of prices at which it could be retailed to the consumer; that, for example, it was customary to carry a certain line of shirts which sold for $1, another line which sold for $1.50 and so on, and that any article selling for this price following the incidence of the tax was the same article or of the same class value as an article selling for that price prior to the incidence of the tax.

The records do show that this fixation of prices to the consumer was maintained both before and after the incidence of the tax and, so far as it appears, no change whatever in selling price was made because of the imposition of the tax. It would appear that if the plaintiffs did not absorb this tax themselves, the only method by which they could have avoided doing so would be that after the incidence of the tax they purchased their goods from the wholesalers at a less price than previously and did not give the consumer the benefit of this reduction; and there is no evidence whatever that this took place, nor is it logical to presume that wholesale prices were reduced in view of the processing tax.

But even attaching little weight to the comparison of the sales slips or disregarding it altogether, the fact remains that there has been a line of witnesses who have testified before the court one after another positively and without contradiction that the incidence of this tax created no change in the prices of retail goods in their store and that various classes of merchandise were sold at exactly the same prices as before the tax was imposed. Therefore, unless the court refuses to place any credence whatever in the statements of these witnesses, it would clearly appear that the tax was not passed on to the consumer, but was absorbed and paid by the plaintiffs

themselves; and there would seem to be no reason why the court should refuse to believe the statements of these witnesses, which are in no way contradicted and which were not impaired or reflected upon by cross-examination.

The explanation of those in authority in the store and who might have had a voice in determining its sales policy is that they knew the tax was not a recurring one, but was levied only on the one occasion on the stock in hand and to take care of a gap which would otherwise have occurred in the operation of the processing tax; that the tax was small compared to the aggregate value of goods in their store upon which it was imposed; that the increase in the price of each article to take care of the tax would have been very small and that they preferred to absorb it themselves rather than to go to the trouble of increasing the prices on each article a small amount and invite question and dissatisfaction on the part of their customers; that their policy of selling various classes of merchandise at fixed and well-known figures was such as they did not wish to upset it and that they, therefore, continued to make sale at these fixed and well-known figures and themselves bore the slight burden which was involved in the payment of this tax. Under the conditions, this policy seems to be a reasonable one.

It may be suggested that if the statements of witnesses that the prices were not increased and the tax was not passed on to the consumer are true, they should be able to confirm this by the sales records; but the fact that there are no definite records bearing on this matter is, in my opinion, confirmatory of the witnesses' statements. So far as the sales slips referred to have any probative effect, they do bear out the testimony of the witnesses. Certainly there is no evidence whatever to deny them, but the very fact that the store continued to sell its merchandise at the same price as previously was the very reason why there are no records of any price changes. If it had contemplated passing this tax on to the consumer, there would most probably have been kept accurate records of costs and selling prices in order that the amount of the tax so passed on might appear and that the amount of the tax might be shown to correspond with the increase in prices. The fact that there is nothing of that sort is a fact which indicates that there was no increase in prices, no passing on of the tax to the consumer and, therefore, no necessity for keeping records showing the amount of the tax.

Believing, as the court has previously stated, that the requirements for the recovery of this tax differ in no essential requisites from those involved in the recovery of any other tax, the court is of opinion that the evidence introduced here is sufficient to entitle the plaintiffs to recover. Under certain conditions, the evidence might have been more extensive and documentary or record evidence might have been offered in support of the plaintiffs' claim, but the very manner in which the plaintiffs handled their business and their decision to absorb the tax themselves is the cause of the absence of any documentary or record proof. The fact remains that we have the testimony of a very considerable number of credible witnesses employed in and exercising a certain amount of authority in the various departments of the plaintiffs' store and each of these witnesses has testified with positiveness that they remember the occasion of the imposition of this tax because of the duties imposed upon them in ascertaining the amount thereof, and who testify with equal positiveness that there was no increase in prices of any article as a result of this tax or following it and that the tax was not passed on to the consumer in the shape of any increase in prices or otherwise; that the sales policy of the store and its prices were in no way altered in any respect; and there is no contradiction of these statements whatsoever and no evidence introduced which tends in any way to discredit them. Under the circumstances, the court would have to adopt the arbitrary attitude of disbelieving these witnesses, which it does not do, and where there is no evidence to justify such disbelief, in order to hold that there has been no proof on the part of the plaintiffs of the claim which they have made, namely, that they paid this tax themselves and in no way passed any part of it on to the consumer.

I think that the plaintiff is entitled to recover the sum named in its complaint, the amount of which is in no way disputed, and an order will be entered carrying out this judgment of the court.